18-07-19 People of the State of Illinois Appealing by Gary Gnedevich v. Gregory Wilson of Appalooie by Karen Ramos Mr. Gnedevich This appeal involves the state appealing the third-stage grant of post-conviction relief to the defendant based on a claim of newly discovered lynch evidence that is supposed to take an establishment or somehow prove actual innocence. So in this case, what we have, we have two things going on to start with. We have actual innocence, and of course we all know what the standard with that is, that basically it has to be newly discovered, material, relevant, non-cumulative, and conclusive. Conclusive, not necessarily establishing innocence beyond a reasonable doubt, but at least conclusive enough that it's more likely than not that no reasonable juror would be likely to convict the defendant, likely to find him guilty beyond a reasonable doubt. With respect to that, we also have what was done previously, which is lynch evidence. Previously, this case came before the court for the direct appeal and then the denial of a PC, and then the question came up on a second PC about newly discovered evidence and lynch evidence. Lynch evidence is evidence, when self-defense is raised, lynch evidence allows testimony, firsthand testimony, firsthand knowledge about the character of the victim, specifically the violent character of the victim. And so this court originally determined, it was determined by the trial court below, and this court affirmed it, and this court found that the proposed lynch witnesses, Paul, Sanders, and I think Jones, this court determined were not newly discovered. They were there, they could have been discovered based on due diligence, and as a result they did not constitute newly discovered evidence. I didn't think that the order mentioned that about those individuals. I don't think the order from this court specifically made that finding. The court noted what the trial judge had found, and the court, I think in an earlier appeal, had said something with respect to Sanders, that her testimony was of a limited nature. The thing is, what this court did focus on, however, was the testimony or was the affidavit of Raymond King. And what this court did is this court sent the case back simply with respect to Raymond King. This court said nothing at all with respect to opening this up for determination for a hearing on anybody and everybody that the defendant wanted to come up with. It was very much limited to Raymond King. This court found that there was potential that Raymond King might have produced evidence of actual innocence, and so you have to take and get his testimony. So this went back to a third-stage evidentiary hearing, supposedly just for Raymond King. Instead, we had King, we had Paul, we had Jones, and then we had Edward Jackson thrown into the mix. So as the state kind of points out, prior to dealing substantively, a substantive consideration of all this, what we've kind of pointed out is the fact that the hearing actually transcended the mandate of this court. The mandate was sent back to King and King only for a third-stage evidentiary hearing. And so... Did the order from this court say that specifically? I'd have to take a look at the advocate's note again. I would not be saying that unless I did not think that that was what the specific purpose was, because that's what this court in the last paragraph, the last two paragraphs, honed in on was King. It wasn't just the fact that... Was it that because the trial judge had found that King's testimony was newly discovered but made a finding originally that it was not something that would have been likely to change the outcome. And that was the finding regarding that we felt that it would maybe change the outcome. We didn't make any findings specifically about any of the rest of them, other than mentioning that that is what the court had found. And I guess... But the thing is, if the court in this decision focuses in on just the one thing and demands just on King, it doesn't demand the thing for everybody. The mandate is what the court issued and what it demanded for it. But the mandate didn't... It did demand for a third-stage evidentiary hearing on the whole thing. It was specifically limited to King. The mandate said go back and take evidence from King and King only? That's how I read the last paragraph or so of the last decision from this court that remanded the case. So, putting all of that aside, if we take a look at what actual innocence is and what lynch evidence is specifically, lynch evidence only deals with the victim. It does not deal with anybody else, just the victim, the victim's violent character. If we take a look, first of all, at Edward Jackson, Edward Jackson basically did not know the victim. So if he didn't know the victim, he cannot provide any kind of firsthand testimony as to the victim's behavior or character. He doesn't know him. He only knows Pickett. Whatever he testified to, he testified to based on inadmissible hearsay, basically what Pickett told him. So Jackson's testimony certainly does not constitute lynch evidence. Helen Sanders, she does not... Her testimony does not constitute lynch evidence. She's only... She doesn't know the victim. All she was able to take and testify to is to what she saw on that morning, which is the location of the body of the victim as the defendant drove off with the victim attached to the car. So Sanders' testimony is not lynch evidence at all. Kevin Jones, he basically says... The state agreed to all of his testimonies. They waived the petition when they didn't file a response to the petition. And when I went to the third stage, the State of the Defense Council agreed to present the evidence of King, Jones, Jackson, Paul, and Sanders. If... A waiver does not, a forfeiture does not operate here because what we're talking about is, if we're going back to the question about the mandate and about the admissibility of the evidence, basically mandate is a question of jurisdiction, and jurisdiction is something that can't be waived. The fact that the state didn't file a response, didn't object to the envelope, doesn't necessarily confer jurisdiction. And that is clear, and I think that that's the only reason why I bothered to raise that is because it is a jurisdictional question, and I didn't want to take in and seem as though I overlooked that particular aspect. Now whether or not the court agrees or not, in a sense, when I say that is not, because when you look at the evidence that was adduced, if you get over the so-called procedural problems or the mandate problem or the race judicata problems and things of this nature that I've already argued, when you look at what I'm doing now as going through the substance of what they testified, the first two clearly don't even qualify as lynch evidence. Whether or not we agreed, or whether or not they were allowed to testify, because the trial judge wanted, obviously, to take in here everything that they possibly could, or that he could, basically doesn't mean that we can't take and still none of us say, well, the trial judge should have determined at that point when he heard the evidence that this particular evidence did not qualify as lynch evidence. So you can't change that. You can't change the nature or the quality or the character of the evidence that was submitted. You can't make this. Okay, so in a general case, the lynch evidence about a victim. But in this case, Pickett was with the victim. And so if I'm asserting self-defense, the fact that Pickett didn't get himself killed in the process, why isn't his violent nature relevant to my self-defense thing? When I got two real nasty fellas standing there, one of them, Pickett, who the testimony was threatened, said, if you try to drive off, you're going to get shot. Why isn't that relevant to, from a common-sense standpoint? I realize that common sense isn't very common. But why isn't that relevant to a self-defense? Because Pickett is very specific about what it provides for. And I thought about your question, because believe me, I thought about that. But there are also, and I'm sure your honors have dealt with cases in the course of being on the bench, those situations where, while there is evidence the victim here might be accountable for something that Pickett may or may not have done or did do. That does not necessarily make him violent. And by that I mean, there are cases out there, I myself have dealt with cases, I've researched and had cases where you have two defendants to go in. One's carrying a gun, the other one is not. And they go in, and the one that carries a gun says, hey, I'm not going to take and hurt anybody. Believe me, I'm not going to hurt anybody. You have to go in, and what does the person do? The person is violent, the person rapes, pillages, and kills somebody. The other guy, yes, he's accountable. Is he going to be accountable for the murder? Yes, he is. Is he going to be sentenced? Yes. But his sentence will be less. His sentence will be less because he's not only not the actor, but basically defining anything. Yes, you are accountable for that, but you are not necessarily as violent as the other person. Society means protection for you, but not as much as. So just because there's accountability does not make the other person violent. My point is, why is it relevant to my self-defense, how I act in self-defense, whether I'm facing two bad guys as opposed to one? In other words, the level of force I might use because I think I've got both these guys to deal with, and maybe if I drop number one, the other guy will say, I don't really want any of that, and vote with his feet. That testimony is okay with respect to, if you want to talk about Pickett, if Pickett becomes somehow of an issue in this case, you're going to talk about Pickett. But you can't have somebody come in and say, oh, hey, Pickett told me this about Williams. The guy doesn't even know him. Or some of the other vendors, Sanders and some of these other people. The point is the fact that the evidence, according to Lynch, has to be directed for the victim's character. And basically what you're doing is you're basically, in a sense, guilt by association. So you said it went back on King. What was King's testimony? King's testimony was the fact that on one evening, Pickett and the victim came by one of his houses, knocked on his door, back door. Didn't try to kick it in, didn't try to enter. Knocked on his back door and said, hey. He said, King responded, what do you want? The guy's got any drugs to sell. Are you still selling drugs? King says, no, I'm not selling out of this house. That was it. Williams and Pickett can't go to leave. For whatever reason, King then says, what I did is I sent out my nephew to cut them off. Doesn't say cut them off of what? Doesn't testify anything at all about knowing that Williams, that the victim here, is violent. It says nothing about the victim's character. It's talking about this incident. And then it says, as my nephew was out there, all of a sudden I saw someone pull a gun. Now, someone. Who's the someone? He never testifies who the someone is. We don't know who the someone is. But he says this, so then I pull my gun and I start firing at them as they're running down the alley, running away from me. Now, these are two people, two guys, supposedly from a robber's place. Now granted, he says someone pulls a gun, doesn't identify. They don't fire a shot at him. They're actually running away as he's firing at them. Thank you. I don't see how that's lynch evidence. I don't see how that depicts the victim as being a violent individual such that it would raise a reasonable thought and a reasonable thought and a reasonable person that they needed to take and use deadly force to defend themselves. That was King's testimony. And I submit that that, even if you want to consider it as lynch evidence, it is so remote, so obtuse, it doesn't prove anything with respect to the victim's character as to being violent. Are there different standards for a third-stage hearing here than there really would be for a trial? I would say so, yes. I mean, some of this may or may not be relevant at a trial and would be probably then rejected. Does it need to have the same standard here? I think there still has to be the relevancy, and I still think there has to be a connection between the evidence and the ultimate purpose for that evidence, which is to establish or to show or to depict the violent character of the person that was killed, the person that you are claiming I had to defend myself against. Because if that person is nonviolent, that person didn't do anything, then the use of deadly force is excessive. And in this case, you then have to factor in, because in the third stage you also factor in the trial testimony, defendant's own trial testimony was basically, other than the fact of the only thing he claimed to remember at trial was basically the victim hanging out of the car, basically he saw he was coming to a tree or something, he grabbed the knife, put it in his right hand, hit something, jolted, and that's all he remembers. Now, what happens is that doesn't show that he stabbed him. That doesn't show that he did anything in self-defense. If anything, that evidence from what he testified to at trial showed an accident, that basically he held a knife, held it like this, and somehow when he hit the thing, the victim went up and came down on the knife and basically, in essence, the victim stabbed himself. And so when you factor that in with this other evidence, you don't have lynch evidence, you don't have any evidence that shows any kind of violent character on the part of the victim. Therefore, granting a new trial to take and submit evidence that basically doesn't show what it's supposed to is error. And that's the basis of our argument. Thank you. Thank you, Your Honor. Is it Ms. Reynos or Reynos? Reynos. Okay. May you please support Hill Hall? I'm Karen Reynos on behalf of Gregory Scott Wilson. I do just want to bring up a few quick points. The first is that in a post-conviction hearing, the circuit court judge acts as the fact finder, so they get to decide what witnesses to give credit to, what weight to give to that credibility, which evidence should be admitted and resolve any of these evidentiary issues. Before the evidentiary hearing occurred, which witnesses and what they would be allowed to testify to was discussed between defense counsel, the state's attorney, and the judge. And from what I remember reading and from what I remember from being there, it was decided that the judge wanted as much evidence presented as possible so that basically the case wouldn't keep going backwards and forwards and try to prevent any further appeals. And the state said we agree with that? And the state said, you know, let's just put them all on. There was an issue with Helen Sanders in that she had already testified previously and that she didn't have anything to do with the lynch evidence. The judge had decided that that would be decided close to the evidentiary hearing, which I believe, if I remember correctly, she was allowed to be subpoenaed. She did not arrive for court.  And that ultimately the judge allowed her prior testimony to be admitted because it did have the chance for examination and cross-examination just for the purpose, I believe, of looking at all evidence old and new in the case. As to whether testimony should have been limited to Raymond King, I do remember that the appellate court's decision prior to the evidentiary hearing did focus a bit on Raymond King, but I do not remember seeing it specifically stated it was limited to Raymond King, which I think is also important. One thing that I did want to bring to the court's attention is that lynch focuses on aggressive character. Aggressive character is not necessarily always a violent character. It can be. Obviously, any convictions for violent crimes, things like that, they're admitted under lynch. But when it comes to firsthand accounts, I would say that aggressive tendencies don't necessarily have to involve violence against a person. Someone could be aggressive in that they rob people a lot and are known to rob people. And I would say most people aren't going to voluntarily give up their property unless they're feeling threatened, and I would say threats are aggression. So as for Kevin Jones, I would say that the purpose of his testimony was to show Victor Williams, who's the victim in this case, he had, I don't want to call it, I'm not sure what to call it, a habit, a tendency. He liked to rob people. Kevin Jones would go with him to rob people. Kevin Jones testified, yeah, he had a gun, or Pickett had a gun. Victor Williams usually had a knife. I would usually go along with a strong arm. We robbed people. We were aggressive. We threatened people. Okay, that's firsthand knowledge. He did it with them. I would also say, as the judge considered the testimony of Raymond Paul, though not necessarily considered new in this successive post-conviction petition, he should have been able to be found earlier, he was robbed by Victor Williams. Victor Williams put a bag over his head and robbed him of thousands of dollars. That's the case that Victor Williams actually was convicted on, ultimately. Raymond Paul actually said to the point that Victor Williams, who he had known since childhood, they went to school together, scared him to the point that he left the state after two weeks. This man scared him so much he left and moved to a different state. I think that's highly relevant. And as for Raymond Paul's testimony being raised judicata, it's waived, it should have been found way back when. Well, I would say fundamental fairness in this case is highly important and that maybe raised judicata in this case should be waived so that Raymond Paul's testimony would be considered along with Raymond King. Lots of Raymonds. That trial, did the state object to that evidence? Raymond Paul was not discovered. I mean, I'm sorry, the third stage evidence. There was no objection by the state to Raymond Paul's testimony. The only objection to any testimony was Helen Sanders. I think the only other point I really would like to make to the court is that in a post-conviction setting, the circuit court's decision should not be reversed unless it's manifestly erroneous. And a manifestly erroneous is when the opposite conclusion is clearly evident, and I can reasonably say if you look at the testimony of Raymond Paul and Raymond King, who, I'm sorry, besides just the testimony about when Pickett and Victor Williams came to rob one of his houses, he also testified that he himself had to run him off the blocks because they kept getting interfering, I believe it's gang turf issues. But he did have more than one instance. Unfortunately, testimony was only done about the instance with the robbery, attempted robbery with guns at the house. So these people knew Victor Williams. They grew up with Victor Williams. They knew him quite well, and they were all willing to come forward and say, yeah, you know what, he was kind of an aggressive guy. He got in a lot of fights. He did a lot of things he shouldn't have done. I could see why someone else would run scared. My last point is as to whether or not Gregory Scott Wilson acted reasonably with what occurred the night Victor Williams died. He was, according to his testimony, he was told if you try to take off, we're going to shoot your car. We're going to shoot you. It being dark in a neighborhood he doesn't know, and two guys who obviously are kind of scaring him, he decides to take off. He decides to leave. He was trying to retreat from a bad situation. Okay? Mr. Pickett said that Victor Williams grabbed onto the car door handle as the car was taking off. One, I don't think a person who's reasonable and not aggressive is going to try to take a hold of a car handle door. Most people are not going to try to hold onto a fleeing car, and if you're holding onto a door handle, most people are going to let go. I'm just saying a reasonable, common-sense person would say, let's not hold onto a car that's taking off. Now, Mr. Wilson testified that Victor Williams actually jumped through the window of his car and was trying to hold onto the steering wheel and simultaneously hitting Mr. Williams in the face. Mr. Wilson, I'm sorry, in the face. So we have Victor Williams jump through the car as it's trying to take off, grabbing the steering wheel, the car's going everywhere, and he's trying to punch Mr. Wilson into submission to get the car to stop. We have testimony, prior testimony from Helen Sanders, who says, yes, he was halfway in the car. His legs were sticking out and the car was going crazy. So Helen Sanders bolsters this testimony of what happened inside the car for Mr. Williams. Okay? And at that point, Mr. Williams says, if I slow down and let you out, will you leave? And Victor Williams says, no, I'm going to kill you. At that point, I would say there's still some aggression going on from Victor Williams. At that point, Greg Wilson grabs the knife that he has in his car. Somehow that knife purposely or accidentally ends up in Victor Williams. I think the more important thing is that he was feeling threatened, and so he picked up the knife. I would say that in as far as self-defense goes, Mr. Williams has been able to show that there were serious aggressive tendencies on behalf of Victor Williams, and he acted reasonably in trying to avoid the situation, get himself out of the situation. And he didn't act unreasonably in his show of force. He grabbed a knife. The car was going crazy. It's not like he pulled a handgun out and shot him in the face, you know, from five feet away after he let him go. It was a complex situation, and I think Victor Williams' aggressive tendencies have a lot to do with that. Is there anything I can answer for you? Thank you. Thank you. Mr. Ganitovic, Senator Gravata. Before we get started, would you agree that one basic Hornbill principle of appellate review is that you can't sit in the trial court and let something go on and not object to it and then come up and ask the appellate court to reverse the trial judge based on an argument you never made in the trial court? I would take and, as a general proposition, agree with that. At the same time, not wanting to sound selfish, but at the same time, as an appellate lawyer and going through a record of seeing this, the last thing that I want to take and see is this court making a comment in its decision about something that may or may not be apparent of record that was not raised by appellate counsel. And so I bring this to the court's attention. I don't – I raise it as an issue, obviously, as a point, but I don't think it's necessarily – it doesn't detract from the basic part of the argument about the lynch evidence. It's not necessarily the defining moment here. And so – but the thing is this. As counsel said, the trial judge wanted to get everything out. Trial judges are prone to do that. Trial judges want to get as much information as possible to try to make a correct decision. Okay, fine. But once they do that, that doesn't mean that what they hear was properly admitted, properly to be considered. In other words, the point here is lynch evidence. The point here is violent or aggressive behavior. And I'll get to that in just a second. The fact that the judge heard all this and did all this, even if it transcended the mandate of the court, even if it considered – the point is he still had to make a determination as to whether this was lynch evidence. That's the error. That's the error here, is the fact that he considered a lot of this lynch evidence because that lynch evidence has to connect to the actual innocence, which has to take the say no reasonable juror would have convicted this defendant if they had heard all the evidence at trial plus this new evidence. And so in this case, counsel could not have made a better argument, in all honesty, for the State here in coming forth with all this content about Williams, about being in the car, about handling standards, et cetera, and about the fact of Pickett saying, you know, shoot your car, this and everything. Perfect. Perfect because the jury heard this. Perfect because the jury rejected it. The jury convicted him. So now the question is, would that have changed had they heard any of this other evidence? Had they heard the other stuff. If they had. Okay. Now, that gets into looking at what? At what was presented. If you don't know the victim, you're not lynch evidence. If you can, testify. And where is there? Where is there in any of the testimony that's here that there was, if you will, violence? You know, don't get me wrong. The individual who was robbed, yes. Okay. His is probably the only thing close enough to even be considered as lynch evidence. The testimony from Kevin Jones. Kevin Jones testified. He knew the victim in Pickett because he ran with them at the Taft homes. He describes they would rob people by selling them dummy drugs. That's at R836 and 837 of the record. That's how Williams robbed people. You can use the word robbed, and yes, it connotes, okay, I mentioned you're going to give up your property and all this other kind of stuff. But that's not what Jones testified to. He's testifying robbing them by selling them dummy drugs, basically. He found people who wanted to buy drugs, sold them stuff as the real drugs that weren't. And so he robbed them. One minute. Thank you. That's not lynch evidence. He testified Pickett was carrying a gun during the Pickett carried a gun? He would take and testify. Jones testified Pickett did not always carry a firearm. R838 of the record. So he would carry it from time to time, but he didn't always carry it. Did he say usually armed with a knife or firearm? He said if they decided to rob somebody, the victim would, if anything, if anything, have a knife. Now, he never testified that he ever brandished it. He never testified that he ever used it. He never testified as to any kind of thing that would show an outward manifestation of violence. The testimony is what it is. Isn't the fact of carrying a sharp knife or a firearm an act of violence to the victim or misuse to the defendant? I would take and say, and the thing about it is with lynch evidence, the irony there is the victim doesn't need to know this. Okay? So to answer your question, your honor, I would say that, yeah, I think there would be a factor. If he knew that the victim here knew Williams had newly carried a knife or whatever, I might say that might have something to do with it, but he didn't know. And what's also interesting is, and I'm not, again, this has, may seem out in left field, okay, but we're starting to now talk about. If we're talking about violence and the fact of being armed with something, we've got the Second Amendment. We've got people walking around in concealed carry these days. Are they violent people just because they're carrying a weapon? Without any kind of indication about anything else that they do? The Second Amendment doesn't cover telling somebody I'm going to shoot you or somebody else is going to shoot you if you're trying to drive off. That's right, somebody else, but not the victim in this case. Thank you, your honor. All right. Well, thank you both for your arguments here this morning. This matter will be taken under advisement. This position will be issued, and we will be in hopefully a real brief recess for panel changes for the next case.